## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**WARREN T. CHEESEWRIGHT** and
**BRENDA J. CHEESEWRIGHT,** a
married couple,

                Plaintiffs,

                                  No. 2:11-cv-15631
  vs.                              Hon. Gerald E. Rosen

**BANK OF AMERICA, N.A.,** a national
banking association,

                Defendant.

_____/

## OPINION AND ORDER
## <u>GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

### I. INTRODUCTION

In this mortgage foreclosure action, Plaintiffs Warren and Brenda

Cheesewright challenge the foreclosure of their home by Defendant, Bank of

America, N.A.  This action was filed in Washtenaw County Circuit Court on

December 14, 2011.  Defendant removed the case to this Court on December

23, 2011.  Discovery closed on May 15, 2012, and Defendant timely filed this

motion for summary judgment pursuant to Federal Rule of Civil Procedure

56 on June 15, 2012.  On October 29, 2012 -- more than nineteen weeks after

Defendant's motion -- Plaintiffs filed their response.

## II. FACTUAL BACKGROUND

On June 24, 2005, Plaintiffs received a $252,000 loan from Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Home Loan Corporation ("HLC"), d/b/a Expended Mortgage Credit. The mortgage securing this loan was recorded on July 7, 2005.

Plaintiff Warren Cheesewright ("Warren") lost his job sometime in 2008, causing him to fall behind on his mortgage payments. Plaintiffs allege that throughout 2009, they contacted Defendant Bank of America to seek a loan modification, and were instructed that the only way to receive a modification was to intentionally fall behind on their mortgage payments. However, the record contains no evidence to substantiate the timing, content, or occurrence of any of the asserted 2009 communications between Defendant and Plaintiffs.

On June 2, 2010, Defendant notified Plaintiffs that they were ineligible for loan modification. However, Defendant conditionally approved Plaintiffs for a loan modification in a letter dated June 30, 2010. In that letter, Defendant stated that "to complete the verification process, send the documents listed on the following page by July 30, 2010." The letter further provided that, upon receipt of these documents and completion of the verification process, Defendant would notify Plaintiffs of whether or not they qualified for a Trial Period Plan, during which Plaintiffs would be required to

2

make timely mortgage payments for three months.  The letter also stated that, upon successful completion of this Trial Period, Plaintiffs (i) "may receive a permanent modification" and, if approved, (ii) "will be notified in writing that [their] permanent modification has been approved."

Plaintiffs appear to contend that this document -- or some other, unidentified document -- constituted a binding loan modification agreement. Plaintiffs also contend that they successfully completed the three-month Trial Period, at the end of which their conditional mortgage modification "would automatically be converted into a permanent loan modification."  However, the record contains no evidence of whether Plaintiffs (i) provided the documentation requested by Defendant, (ii) were approved for the Trial Period, (iii) successfully completed the Trial Period, or (iv) received a written modification of their loan.  Defendant asserts that Plaintiffs never submitted the requested documentation, were never approved for a loan modification, and consequently cannot offer any evidence to support their claim that the loan was modified.

On September 6, 2011, Plaintiffs' mortgage was assigned to Defendant Bank of America, successor by merger to BAC Home Loans Servicing, LP, f/k/a CountryWide Home Loans Servicing, LP.  The mortgage was recorded on September 12, 2011.  Following Plaintiffs' default, Defendant initiated

foreclosure proceedings and scheduled an auction sale for December 15, 2011. Plaintiffs filed the present action on December 14, 2011.

## III. DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, "[t]he non-moving party may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *El-Seblani v. IndyMac Mortg. Services*, 12-1046, 2013 WL 69226 (6th Cir. Jan. 7, 2013) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d

4

381, 390 (6th Cir. 2008)). Further, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack*, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

## B.   Plaintiffs' Claims

Plaintiffs have alleged twelve causes of action against Defendant. Each will be addressed in turn.

### 1.   No Proof of Ownership of Loan / Authority to Foreclose

In Count 1, Plaintiffs allege that Defendant Bank of America lacks the requisite ownership interest in their mortgage to initiate foreclosure proceedings because Defendant's interest in the mortgage was assigned by MERS -- the nominee of mortgagee HLC -- rather than HLC itself. Plaintiffs also allege that the assignment was invalid because it was "forged" through a process known as "robo-signing."

Plaintiffs, however, lack standing to challenge the validity of an assignment between third parties. *See, e.g.*, *Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 746 (E.D. Mich. May 13, 2010), *aff'd* No. 10-1782, 399 Fed. App'x 97 (6th Cir. Oct. 28, 2010) ("Plaintiff here lacks standing to assert any breaches in the terms

of any contracts between the assigning entities."); *Ott v. Federal Home Loan Mortgage Corp.*, No. 11-15153, 2012 WL 2359989, at *1, *3 (E.D. Mich. June 21, 2012).  Because Plaintiffs lack standing to challenge the assignment of their mortgage, Defendant's motion for summary judgment on Count 1 must be granted.

Further, it should be noted that the Michigan Supreme Court has held that the owner of an interest in the indebtedness -- in this case the assignee, MERS -- is authorized to foreclose by advertisement under M.C.L. § 600.3204(1)(d).  *Residential Funding Co., LLC v. Saurman*, 490 Mich. 909, 805 N.W.2d 183 (2011).  This holding directly contradicts the central premise of Plaintiffs' claim: that MERS lacked the authority to foreclose on Plaintiffs' property (and, therefore, lacked the ability to assign this authority to a third party, *i.e.*, Defendant).  Thus, even if Plaintiffs had standing to challenge the assignment of their mortgage to Defendant,[1] the assignment and subsequent

---

[1] The Court declines Plaintiffs' invitation to reverse its conclusion in *Livonia* in favor of Plaintiffs' assertion that the Court is bound by Michigan -- rather than federal -- standing jurisprudence.  Plaintiffs must satisfy both state and federal standing requirements to pursue a cause of action in federal court.  *See, e.g.*, *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005) ("Where, as here, jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action."); *Bano v. Union Carbide Corp.*, 361 F.3d 696, 713-14 (2d Cir. 2004) (applying federal law of standing in a diversity action and holding that plaintiff organizations lacked standing to bring damages claims belonging to their members); *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 156-57 (2d Cir. 2003) (applying state law of standing in a diversity action to determine if

foreclosure of Plaintiffs' property are legally sound under Michigan law. Summary judgment in favor of Defendant on Count 1 is therefore GRANTED.


### 2.    Tortious Interference with Contractual Relations

In Count 2, Plaintiffs allege tortious interference with contractual relations because Defendant "has rushed to rush to [sic] breach the Mortgage contract" so it could collect federal bailout funds.   Tortious interference requires (i) the existence of a contract, (ii) a breach of that contract, and (iii) an unjustified instigation of the breach by the defendant.   *Health Call v. Atrium Home & Health Care Servs. Inc.*, 268 Mich. App. 83, 90-91, 706 N.W.2d 843 (2005).   Further, "a plaintiff must demonstrate, with specificity, affirmative acts by the interferer which corroborate the unlawful purpose of the interference."   *Formall, Inc. v. Community Nat'l Bank of Pontiac*, 166 Mich. App. 772, 779, 421 N.W.2d 289 (1988).

Plaintiffs allege that Defendant breached its duty to put forth good faith efforts to modify Plaintiffs' loan or mitigate their loss.   However, Plaintiffs offer no evidence or argument identifying either (i) which provision of the contract requires good faith or (ii) which provision of the contract was

---

plaintiffs had standing to bring claims of breach of fiduciary duty and breach of contract); *Metro. Express Servs., Inc. v. City of Kansas City*, 23 F.3d 1367, 1369-70 (8th Cir.1994) (holding that a plaintiff in a diversity action must establish standing under applicable state law as well as under Article III).

breached.  The only indication that Defendant had a duty of good faith is Plaintiffs' statement in its complaint that "[t]he contract, as interpreted under the HUD guidelines from which it originates, requires certain good faith efforts to modify Plaintiff[s'] loan."  Not only does this duty not appear in the express terms of the contract, but Plaintiffs do not point to any evidence in the record supporting the existence of such a duty.  Consequently, Count 2 cannot survive Defendant's motion for summary judgment.

In their response, Plaintiffs argue that Defendant's motion should be denied because "Plaintiffs' well-pleaded Complaint clearly states the 'qualifying elements for a tortuous [sic] interference with contract.'"  This statement indicates confusion regarding the difference between surviving a Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) and the instant Motion for Summary Judgment, made pursuant to Fed. R. Civ. P. 56.  To survive a motion to dismiss, Plaintiffs' complaint must make allegations which, if they are accepted as true, are "enough to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Summary judgment, on the other hand, does not allow the non-moving party to rest on the allegations in its complaint.  *El-Seblani v. IndyMac Mortg. Services*, 12-1046, 2013 WL 69226, at *1, *2 (6th Cir. Jan. 7, 2013) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008)).  Rather, the non-

8

movant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex,* 477 U.S. at 322.  Thus, the fact that "Plaintiffs have stated a claim for tortious interference" does not save Count 2 from summary judgment, which is hereby GRANTED in Defendant's favor.

### 3.    Declaratory Relief - Foreclosure Barred by Unclean Hands

Count 3 states that Defendant's alleged misrepresentations should bar Defendant from foreclosing on Plaintiffs' property under the doctrine of Unclean Hands.  However, the "unclean hands" doctrine does not state a cause of action.  *Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 911 (E.D. Mich. March 7, 2012) (citing *Heritage Broad Co. v. Willson Commc'ns*, Inc., 170 Mich. App. 812, 819, 428 N.W.2d 784, 787 (1988)). Rather, it is a defense that "depends upon the connection between the complainant's iniquitous acts and the defendant's conduct which the complainant relies upon as establishing his cause of action."  *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 797 (6th Cir. 2009).  The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Stachnik v. Winkel*, 394 Mich. 375, 382; 230 N.W.2d 529 (1975).  Plaintiffs concede in their response that the doctrine of unclean hands is more of a

defense to the foreclosure than a claim for relief; however, they have pled the doctrine as a basis for affirmative relief.  As Count 3 does not allege a cause of action, Defendant's motion for summary judgment on that count is GRANTED.

### 4.   Breach of Contract - Implied Duty of Good Faith and Fair Dealing

Count 4 of Plaintiffs' Complaint alleges that "Michigan courts recognize a duty of good faith in a contractual relationship where a party is given discretion to make a determination under the contract."  However, "[i]t is well established . . . that Michigan 'does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing.'"  *Pendracki v. BAC Home Loans Servicing, LP*, Case No. 11-14588, 2012 WL 3887509, at *1, *5 (E.D. Mich. Sept. 7, 2012) (quoting *Baumgartner v. Wells Fargo Bank, N.A.*, No. 11-14065, 2012 WL 2223154, at *1, *5 (E.D. Mich. June 15, 2012); *Meyer v. Citimortgage, Inc.*, 2012 WL 511995, at *1, *6 (E.D. Mich. February 16, 2012) ("Michigan law simply 'does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing.'") (citing *Fodale v. Waste Management of Michigan*, 271 Mich. App. 11, 35 (2006)).

Plaintiffs rely on *Burkhardt v. City National Bank of Detroit*, 57 Mich. App. 649, 652, 226 N.W.2d 678, 680 (1975), for the proposition that Michigan

courts will recognize an action for breach of an implied covenant of good faith and fair dealing where "a party to a contract makes the manner of its performance a matter of its own discretion." This argument is unavailing. As this Court stated in *Soto v. Wells Fargo Bank, N.A.*, Case No. 11-14064, 2012 WL 113534, at *1, *5 (E.D. Mich. Jan. 13, 2012), the policy concern at issue in *Burkhardt* -- which dealt with escrow accounts -- "no longer applies after the enactment of the Real Estate Settlement Procedures Act." More specifically, when "the mortgage expressly permits foreclosure by advertisement upon default, . . . the discretion discussed in *Burkhardt* does not apply." *Id.* The Third and Fifth Circuits also have recognized that "Michigan law does not imply the good faith covenant where parties have unmistakably expressed their respective rights." *Cutrone v. Daimler-Chrysler Motors Co., LLC*, 160 F. App'x 215, at *1, *3 (3d Cir. 2005) (citing *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 877 (5th Cir. 1989)).

Because Michigan law does not recognize an implied duty of good faith and fair dealing, particularly when, as here, the parties have unmistakably expressed their rights in a written contract, summary judgment is GRANTED in favor of Defendant on Count 4.

11

### 5.      Federal Fair Debt Collection Practices Act

Count 5 alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*.  However, Plaintiffs' Complaint contains no factual allegations beyond (i) listing the subsections of § 1692 that Defendant allegedly violated and (ii) concluding that the asserted violations caused Plaintiffs harm.  Conspicuously absent from the Complaint are any details regarding how Defendant supposedly violated this statute.  Further, the FDCPA "does not apply to creditors who attempt to collect their own debts in their own name."  *Powell v. Computer Credit, Inc.*, 975 F. Supp. 1034, 1041 (S.D. Ohio 1997).  As 15 U.S.C.A. § 1692a(6) states, "[t]he term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business *the principal purpose of which is the collection of any debts*, or who regularly collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or due another*." (emphasis added).  Thus, since Defendant was collecting a debt in its own name, and is not principally in the business of collecting debts, the FDCPA is not applicable.  *See Montgomery v. Huntington Bank*, 346 F.3d 693, 700 (6th Cir. 2003) ("Congress drew a distinction between a debt collector and an enforcer of a security interest."); *see also*, *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 104 (6th Cir. 1996) ("[A] debt collector does not include the consumer's creditors.").  Absent any evidence from Plaintiffs that

12

Defendant is a debt collector under the FDCPA, summary judgment in Defendant's favor is GRANTED on Count 5.

### 6.      MI Fair Debt Collection Practices Act

Despite captioning Count 6 as a Michigan Fair Debt Collection Practices Act claim, Plaintiffs' claim actually alleges that Defendant violated the Michigan Occupational Code ("MOC"), Mich. Comp. Laws § 339.901 *et seq.*, by (i) failing to give Plaintiffs validation notice; (ii) threatening to initiate legal action; and (iii) communicating with Plaintiffs after being notified that they were represented by an attorney.   Count 6 fails for the same reasons as Count 5.   Most basically, the claim includes no factual allegations to plausibly establish a violation of the MOC, and contains only "bare assertions of legal conclusions." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003).   This type of pleading cannot survive a motion to dismiss for failure to state a claim, let alone a motion for summary judgment. *See Iqbal*, 556 U.S. at 678.

Additionally, Plaintiffs fail to demonstrate that the MOC applies to Defendant.   Courts have held that "the MOC does not apply to mortgage foreclosures." *Agbay v. Wells Fargo Bank, N.A.*, 2012 WL 3029825, at *1, *7 (E.D. Mich. July 25, 2012) (citing *Soto v. Wells Fargo Bank, N.A.*, No. 11-14064, 2012 WL 113534 (E.D. Mich. Jan. 13, 2012)).   Specifically, the MOC

does not apply to those entities "whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency . . . ." Mich. Comp. Laws § 339.901(b). Indeed, the term "Collection Agency" under the statute does not refer to "[a] state or nationally chartered bank when collecting its own claims." Mich. Comp. Laws § 339.901(b)(ii). Accordingly, any actions by Defendant to foreclose on Plaintiffs' residence or to collect outstanding loan payments do not constitute debt collection under the MOC. Summary judgment must be GRANTED in favor of Defendant on Count 6.

### 7.    Accounting

Count 7 requests that this Court compel Defendant to "prepare, at their sole expense, a true and accurate accounting of all of activities relative to Plaintiffs' account, including but not limited to an accounting of any/all trial period/forebearance payments made based on Defendants' promise to grant a permanent loan modification." An action for an accounting "is equitable in nature, but whether a plaintiff has stated a cause of action for an accounting must be determined from the facts pled in the plaintiff's complaint rather than from the prayer for relief." *Boyd v. Nelson Credit Centers, Inc.*, 132 Mich. App. 774, 779, 348 N.W.2d 25, 27 (1984) (citing *Marshall v. Ullmann*, 335 Mich. 66, 71, 55 N.W.2d 731 (1952)). However, "[a]n accounting is

14

unnecessary where discovery is sufficient to determine the amounts at issue." *Cyril J Burke, Inc. v. Eddy & Co. Inc.*, 332 Mich. 300, 303, 51 N.W.2d 238 (1952).

Plaintiffs' need to calculate the payments made by them on their own mortgage is insufficiently complex to justify the invasive action of requiring Defendant to undertake an accounting. *Boyd*, 132 Mich. App. at 779-80 ("The allegations in plaintiffs' complaint do not support an inference that the transactions at issue are so complex that ordinary discovery procedures would be inadequate."). Indeed, it seems that simply looking at Plaintiffs' checkbook or attaining a current mortgage statement from Defendant would be sufficient to determine this information.[2] Thus, summary judgment is GRANTED on Count 7.

### 8. Intentional and Constructive Fraud

Counts 8 and 9 of Plaintiffs Complaint, respectively, allege intentional fraud and constructive fraud, stating that (i) Defendant lied to Plaintiffs by informing them that the only way to receive a modification was to intentionally fall behind on their loan payments and (ii) that Plaintiffs relied

---

[2] To the extent that Plaintiffs' request for an Accounting is specifically limited to funds paid in accordance with Defendant's asserted promise to modify Plaintiffs' loan, Plaintiffs' request must be rejected as moot in light of the Court's determination that Plaintiffs have failed to provide any evidence that Defendant made such a promise. *See infra*, §§ III.B.8, 10-11.

on those statements to their detriment.  To succeed on a claim for fraud, Plaintiffs must plead and prove that "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage."  *M & D, Inc. v. McConkey*, 231 Mich. App. 22, 27 (1998).  Indeed, in pleading fraud, Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

The Sixth Circuit has interpreted Rule 9(b) as requiring that Plaintiffs describe specific statements, identify the speaker, specify when and where the statements were made, and explain why the statements were fraudulent. *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008).  "The threshold test is whether the complaint places the [D]efendant on sufficient notice of the misrepresentation, allowing the [Defendant] to answer, addressing in an informed way the [Plaintiffs'] claim of fraud."  *Kashat v. Paramount Bancorp, Inc.*, No. 09-10863, 2010 WL 538295, at *1, *4 (E.D. Mich. Feb. 10, 2010). When a party fails to meet its Rule 9(b) burden, dismissal is warranted.

16

It is clear that Counts 8 and 9 could not even survive a Rule 12(b)(6) motion to dismiss, let alone summary judgment. Plaintiffs' Complaint does not describe any specific statements, does not identify the speaker, the time or place of the statements, or explain how the statements were fraudulent. Thus, these claims should be dismissed under Rule 12(b)(6) for failure to state a claim.

Even if Plaintiffs are correct that specific pleading is not required because the necessary facts were in Defendant's exclusive control at the time the complaint was filed, they must still present sufficient evidence of fraud to defeat Defendant's motion for summary judgment. They have not done so. Rather, Plaintiffs' counsel -- once again confused between a motion to dismiss and a motion for summary judgment -- cites only to the allegations in the Complaint to support Counts 8 and 9, stating: "[t]he touchstone of [Plaintiffs] factual basis is whether Plaintiffs' allegations state a claim for relief." Because Plaintiffs may not merely rely on the allegations in their pleadings to defeat a motion for summary judgment, Defendant's motion must be GRANTED for Counts 8 and 9.

### 9.   Unjust Enrichment

Count 10 of Plaintiffs' Complaint -- unjust enrichment -- must be dismissed because an unjust enrichment claim is barred by the mortgage.

17

*Baumgartner*, 2012 WL 2223154, at *8. This is because "[c]laims of unjust enrichment cannot proceed where there is an express contract covering the subject matter; they are only applicable where a contract is implied." *Id.* (citing *Fodale v. Waste Management of Michigan, Inc.*, 271 Mich. App. 11, 36, 718 N.W.2d 827 (2006) (holding that the existence of an express loan agreement governing a contractual relationship is sufficient ground to defeat a debtor's claim of unjust enrichment.). Thus, Defendant's motion for summary judgment on Count 10 is GRANTED.


### 10.    Breach of Contract

Count 11 of Plaintiffs' Complaint alleges breach of contract for failure to permanently modify their loan. Plaintiffs contend that a valid contract exists because "Plaintiffs' allege that Plaintiffs took all necessary actions to create a valid, binding contract." Once again, the allegations listed in a Complaint, standing alone, are insufficient to survive a properly-supported motion for summary judgment.

Further, the June 30, 2010 letter from Defendant to Plaintiffs -- which conditionally approved a modification of Plaintiffs' mortgage -- does not constitute a binding contract. The letter (i) requires further actions by Plaintiffs "to complete the verification process" and provides a timeframe in which those actions must be completed; (ii) explicitly states that Plaintiffs are

not obligated to participate in the modification program; and (iii) indicates that Plaintiffs "*may receive* a permanent modification *if* [they] successfully make all of [their] Trial Period Plan Payments." (emphasis added). Nothing in this letter indicates that Defendant promised to modify Plaintiffs' mortgage. Consequently, there can be no contract.

Indeed, the letter expressly states that Plaintiffs are not obligated to enter the modification program -- demonstrating that Plaintiffs were not bound by the letter -- and premises their eligibility for a modification upon future actions. Plaintiffs' have also provided no evidence -- aside from the allegations in their Complaint -- that they complied with the requirements outlined in the letter. Because there can be no breach without a valid contract, and because Plaintiffs cannot even demonstrate compliance with the contract they allege exists, summary judgment in Defendant's favor is GRANTED on Count 11.

### 11. Promissory Estoppel

Plaintiffs' final Count -- Promissory Estoppel based upon an alleged promise by Defendant to modify their loan -- is barred by the Statute of Frauds. To succeed in a claim for promissory estoppel, Plaintiffs must establish the existence of "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial

19

character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 686-87, 599 N.W.2d 546 (1999).

In Michigan, however, certain types of promises or agreements must be in writing before they can be enforced. *Crown Technology Park v. D&N Bank, F.S.B.*, 242 Mich. App. 538, 548 (2000). The burden of proving an enforceable agreement is even heavier when bringing a claim against a financial institution. Specifically, M.C.L. § 566.132(2) provides, in relevant part, that an action cannot be brought against a financial institution to enforce any "financial accommodation," unless the promise or commitment "is in writing and signed with an authorized signature by the financial institution." In *Crown Technology*, the plaintiff sued the bank to enforce an alleged unwritten promise by the bank to waive a prepayment penalty provision in the plaintiff's mortgage loan. The Court of Appeals of Michigan held that plaintiff's promissory estoppel claim was barred by § 566.132(2), which "plainly states that a party is precluded from bringing a claim -- no matter its label -- against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Id.* at 550. In reaching its conclusion, the court noted that its ruling extended beyond promissory

20

estoppel claims, and that §566.132(2) barred all unwritten promises, regardless how such claims were labeled, explaining:

> However, as we noted above, the Legislature used the broadest possible language in M.C.L. § 566.132(2); M.S.A. 26.922(2) to protect financial institutions by not specifying the types of "actions" it prohibits, eliminating the possibility of creative pleading to avoid the ban.

Plaintiffs have failed to present any evidence of a signed, written agreement wherein Defendant promised to modify their loan. Consequently, Defendant's motion for summary judgment is GRANTED on Count 12.[3]

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED on all counts.

**IT IS SO ORDERED.**

**Dated:  February 21, 2013**

**s/Gerald E. Rosen**
**GERALD E. ROSEN**
**CHIEF JUDGE, U.S. DISTRICT COURT**

---

[3] Plaintiffs claim that Mich. Comp. Laws § 566.132 does not bar their claim because they "are not seeking to enforce the terms of an oral promise to modify the Loan. Plaintiffs are suing Defendant for monetary damages as a result of Defendant's fraudulent representations that caused Plaintiffs to default on her [sic] loan." However, this Court has already dismissed Plaintiffs' claims for Intentional Fraud (Count 8) and Constructive Fraud (Count 9). Thus, to the extent that Count 12 may be interpreted as alleging fraud, summary judgment in favor of Defendant is GRANTED for the reasons laid out in § III.B.8.

## CERTIFICATE OF SERVICE

**I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Thursday, February 21, 2013, by electronic and/or ordinary mail.**

**s/Julie Owens**

**Case Manager, (313) 234-5135**